UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

LAREDO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § § | CRIMINAL NO. 5:22-CR-01242-01 |
| ANTHONY MICHAEL DEL BOSQUE | § § | |

**FACTUAL STATEMENT IN SUPPORT OF PLEA AGREEMENT**

The United States of America, by and through JENNIFER B. LOWERY, United States Attorney for the Southern District of Texas and Jose Angel Moreno, Assistant United States Attorney, and the defendant, **ANTHONY MICHAEL DEL BOSQUE** and the defendant's counsel, hereby stipulate as follows:

I.

If this case proceeded to trial, the United States of America would prove each element of the offense beyond a reasonable doubt. The following facts, among others, would be offered to establish the Defendant's guilt:

II.

On August 15, 2002, ATF Special Agent (SA) Shaun Insley received information from DEA that **Anthony DEL BOSQUE (ANTHONY)** had Machine Gun Conversion Devices (MGCDs), specifically, AR-type firearm auto-sears for sale.

On **August 31, 2002,** ATF obtained **ANTHONY**'s cell phone number (**956-629-6430**) and passed the number to ATF Confidential Informant (CI). ATF instructed the CI to contact **ANTHONY** and attempt to purchase the MGCDs. The CI called **ANTHONY**, and after a short conversation, **ANTHONY** told the CI that **ANTHONY** would pass the CI's number to

ANTHONY's brother "Joel". At approximately 2:15 p.m., the CI received a WhatsApp message from "Joel" utilizing phone number **956-516-2333**. "Joel" stated that he had 4 or 5 MGCDs for sale and could make more. "Joel" asked for $350.00 per MGCDs. The CI agreed to buy 4 MGCDs for $1,400.00, and "Joel" told the CI to meet "Joel" at the Popeye's Restaurant on San Bernardo Avenue.

At approximately 5:00 p.m., ATF, DEA, and FBI set up surveillance at Popeye's. At approximately 5:15 p.m., surveillance saw **Alberto DEL BOSQUE (ALBERTO)** arrive. At approximately 5:45 p.m., **ALBERTO** moved to the Pizza Hut parking lot next to Popeye's. **ALBERTO** got off his car and entered the CI's car that was parked at Popeye's. Upon entering the car, **ALBERTO** handed the CI **five (5) black MGCDs**. The CI kept **four (4) MGDCs** and returned one to **ALBERTO**. **ALBERTO** then explained how the MGDCs fit into an AR-type firearm. The CI then paid **ALBERTO** $1,400.00, and **ALBERTO** left the CI's car. ATF then met with the CI at a designated location and recovered the four MGCDs.

On **September 1, 2022, ALBERTO** contacted the CI from **956-629-6430 (ANTHONY**'s number) via WhatsApp and offered the CI an AR-type rifle with an MGCD installed for $1,700.00. **ALBERTO** requested the same meeting location. At approximately 5:33 p.m., surveillance saw **ALBERTO** arrive at the Pizza Hut parking lot. As he arrived, an LPD patrol unit conducted a traffic stop in the Popeye's parking lot, so **ALBERTO** told the CI to move to the Baymont by Wyndham Hotel on Tesoro Lane.

At approximately 5:40 p.m., **ALBERTO** parked on Tesoro and walked over and entered the rear driver side of the CI's car and an Unknown Male (UM) entered the front passenger seat. The UM brought the firearm to the CI's car. The firearm was **a privately manufactured AR-type, short-barrel rifle, with no manufacturer, model, or serial number markings** on it. The

UM opened the firearm to show the CI that the MGCD was installed inside the firearm. **ALBERTO** warned the CI not to get caught with the firearm because it was illegal. The CI gave **ALBERTO** $1,400.00 for the firearm. **ALBERTO** told the CI that the UM was **ALBERTO**'s cousin and wanted the CI to meet him so the CI could start doing business with the UM in the future. The UM and **ALBERTO** then departed.

On September 8, 2022, ATF spoke to the CI who related that **ALBERTO** has sent the CI a photo of an AR-type firearm with a green lower receiver. **ALBERTO** told the CI that this firearm and another were available for sale with MGCDs. **ALBERTO** wanted $3,400 for both firearms. **ALBERTO** stated that **ANTHONY** made one of the AR-type firearms. **ALBERTO** agreed to meet the CI on September 9, 2022.

On **September 9, 2022**, **ALBERTO** told the CI that they needed to meet on the South side of Laredo because **ALBERTO** would be picking up the firearms before meeting with the CI. At ATF's request, the CI told **ALBERTO** they could meet at the Walmart on Highway 83. At approximately 4:15 p.m., **ALBERTO** arrived as the passenger in a Mazda car that parked next to the CI's car. **ALBERTO** entered the passenger seat of the CI's car and placed **two (2) MGCDs** in the cup holder of the CI's car. **ALBERTO** told the CI that **ANTHONY** would be delivering one the firearms. **ANTHONY** called during the meeting and **ALBERTO** told **ANTHONY** where he and CI were located. **ALBERTO** told the CI that **ALBERTO** was going to buy a .40 caliber pistol from a person coming to their location. **ALBERTO** and the CI then went to the Mazda.

At approximately 4:30 p.m., **ANTHONY** arrived in a motorcycle and entered the rear passenger seat of the Mazda carrying a backpack. **ANTHONY** extracted the **firearm with the green lower receiver** and gave it to **ALBERTO**. **ALBERTO** transferred the firearm to the CI. At approximately 4:32 p.m., a Buick arrived and **ALBERTO** entered the rear passenger seat of

the Buick. The Buick rode around the parking lot and then parked in front of the CI's car. **ALBERTO** got out of the Buick with a .40 caliber pistol and reentered the Mazda.

At approximately 4:39 p.m., the Mazda and the motorcycle drove away from the CI's car. At approximately 4:47 p.m., the Mazda returned to the CI's location. **ALBERTO** exited the passenger side of the Mazda and entered the CI's car. **ALBERTO** handed the CI a second **AR-type rifle with a black lower receiver**. **ALBERTO** then pulled out two black AR-type magazines, one empty and one with 30 rounds of ammunition. The CI then handed **ALBERTO** $3,400.00 and **ALBERTO** went back to the Mazda. **ALBERTO** and **ANTHONY** then met in front of the Peter Piper Pizza, located in the same parking lot. **ANTHONY** got off the motorcycle and entered the Mazda. The CI drove off to the designated location. ATF recovered the **two AR-type firearms and the two magazines and ammunition.**

On September 9, 2022, ATF examined and test fired the AR-type firearm acquired on September 1, 2022. The firearm was labeled as a **Make N/a, Model N/A, Serial Number: None, Caliber 5.56 mm AR-15 Type Rifle (Privately Made Firearm)**. ATF determined that **the firearm functioned as a machine gun.** ATF noted that the black auto sear was made from a plastic material which is commonly produced from a 3-D printer.

On September 15, 2022, ATF examined the firearms obtained on September 9, 2022, the privately manufactured firearms (PMFs), all rifles with no serial numbers. All three firearms contained a muzzle device screwed on at the end of the barrel which were not pin and welded, thus are not included in the measurement of the barrel. ATF determined that:

Item # 8 had an overall length of 24¼ inches, and a barrel length of 8¾ inches;

Item #14 had an overall length of 27½ inches, and a barrel length of 8½ inches; and

Item # 15 had an overall length of 29¼ inches, and a barrel length of 10¾ inches.'

All barrel lengths were thus shorter than 16 inches.

III.

Defendant, **ANTHONY MICHAEL DEL BOSQUE**, hereby confesses and judicially admits that on **August 31, 2022**, he **knowingly and unlawfully Possessed and Transferred a Machinegun**, in violation of Title **18**, United States Code, Sections **922(o), 924(a)(2) and 2**.

_____
**ANTHONY MICHAEL DEL BOSQUE**
Defendant

APPROVED:

JENNIFER B. LOWERY
UNITED STATES ATTORNEY

By: _____          _____
José Angel Moreno                                            Jose Salvador Tellez II
Assistant United States Attorney                     Attorney for Defendant
Southern District of Texas
Telephone: (956) 723-6523
Email: angel.moreno@usdoj.gov